First case this afternoon is 5-14-0058, Dribben v. Lurbo Land Trust, et al. Counselor, are you ready to proceed? Yes, sir, Your Honor. Good afternoon. Paul Mehta for the Appellant's Bill of Money, Dribben. This is an appeal of the circuit court's January 22, 2014 order entered after demand from an earlier appeal, 05-12-0579. The Dribben should win this appeal because the order that the court entered pursuant to the mandate and this court's order does not comply with your June 7, 2013 appellate order, which held that the court erred by not entering a two-year stalking no contact order. But that's not what our order said. Our order didn't say that the court erred by not entering a two-year order, right? Our order said by not entering an order. It said that the – well, it said it in two parts. It said that the court erred by not granting – erred as a matter of law in applying the wrong regional person standard and, as a matter of fact, denying a plaintiff's petition for a stalking no contact order under 740 ILCS 21-1135. Nowhere in that order does it say that the trial court was required to enter a two-year order. It does not specifically state that. I agree with that. Okay. And I'm going to address where you're headed with that because under the law, the circuit court is supposed to read the order and interpret it. And if things are implied in the order, he has to follow what's implied in the order. And that's the PSL case from the Illinois Supreme Court. I have that citation for you. 86 Illinois 2nd 291, Illinois Supreme Court from 1981. So what this court did specifically order the circuit court to do was enter a stalking no contact order. And I don't think there's any dispute about that. And so the position that the derivatives believe is correct is that in reading this order as a whole, okay, that it clearly requires the entry of a two-year order. Perhaps in recognition, and at the hearing on December 20th of 2013 in front of Judge McGlynn, we pointed out that the mandate and the order, in our opinion, required the entry of a two-year order. And perhaps in recognition that we were correct, the circuit court judge also entered factual findings in his order of changed circumstances, we think, to explain what we believe is the noncompliance with the mandate and the opinion. So let me backtrack on a question. Back to what you were talking about with the two-year order. Would the court have the power to enter an order until the property is sold? Under the act, the maximum amount of time that the order can be enforced is for two years. So basically you're asking for it until it's sold, hoping it's within two years because two years is the max. Well, it would be two years, or if we sell the property before two years, then at that point we think the order would no longer be necessary. I understand. So we're trying to be reasonable. I mean, obviously two years is the maximum amount that the order can last, but we don't want to make the order stay in place any longer than is absolutely necessary. So for example, next month, supposing we win and the property sells, then the order could be released at that point. Okay. Yeah. So this case began on May 31, 2011, when we filed a tort action in part to obtain injunctive relief to keep the Davidsons from trespassing and basically doing things that would interfere with the ability to sell the property. On June 7, a week later, they amended the complaint, and we added Count 9, which is for a stalking no-contact order. On June 30, 2011, Judge McGlynn entered a 90-day order. He entitled it a no-contact order directed at Mrs. Davidson, finding the order was supported by the evidence and appropriate. We actually appealed that order and said, no way, 90 days isn't enough time. It should be two years. You know, this has gone on since 2006 and before, and a 90-day order with a history of, you know, five years of harassment isn't really sufficient. And this court affirmed Judge McGlynn. We filed a PLA, and that was denied. And so that is now the law of the case. That order expired on September 26th of 2011, and almost immediately thereafter, additional stalking events occurred. So on December 14th of 2011, we filed a second motion for a stalking no-contact order. That was the motion and the order that resulted from that that was the subject matter of the appeal in 05-12-0579. So after multiple lengthy hearings and a state of the case, while the Drivens pursued their first appeal, including the PLA, on November 21st of 2012, the circuit court denied entirely the second motion for the stalking no-contact order, and then we appealed. Then on June 7th of 2013, roughly a year ago, this court entered its order that's now at issue in part in this case. The order specifically held that the court verdes a matter of law in applying the wrong reasonable person standard under the Act and further, as a matter of fact, in denying the Drivens' petition for a stalking no-contact order. The order also specifically describes the relief that the Drivens sought, which was an order under the Act prohibiting Mrs. Davidson from engaging in further acts of stalking for two years. So if you read, I have another case to cite to you that was not in our briefs and I located in preparing for today. It is a fourth. Could you file a motion to supplement and then, since you say it wasn't cited? I did not. I found this case this morning. No, that's okay. Did you notify counsel of the case, of the opposing counsel? I'm sorry? Did you notify opposing counsel of the case? I have not. And you can't discuss it? I won't discuss it. That's fine. If you look at the PSL Realty case, PSL Realty basically sets out the procedure that the circuit court should use and the appellate court should use in deciding whether or not an order complies with the mandate. The correctness of the trial court's action I'm reading from PSL now, on or man, is being determined from the appellate court's mandate as opposed to the court's opinion. If the direction is to proceed in conformity with the opinion, of course, the content of the opinion is significant. And so in this case, the mandate required the court to enter an order consistent with its order. So the order is important. The Supreme Court also instructs us that matters which are implied may be considered embraced by the mandate. And so that's addressing your concern, which is, you know, the order doesn't specifically direct and enter a two-year order. But we believe that that's implied when they say that we asked for two years and that the court erred in not giving us a two-year order. Well, the trial court in any stalking no-contact order case has the authority, even though the petition requests a two-year no-contact order, the trial court has the discretion to enter one for a shorter period, right? In any case. I think that discretion... Two years is the max. Two years is the max, and the court has discretion, but the discretion is not unbounded. It has to be based upon the facts of what's happened. And in our case, we have a situation where we got an order. It was for 90 days. And then immediately after the order expired, there were further acts of stalking that then caused another motion. And so, you know, what we're trying to do is eliminate all the controversies. And we think that, you know, this is, you know, the Drivens have spent three and a half years trying to get this order. So giving them an order for six months, you know, seems kind of insufficient to protect them from further acts when there's already been a situation where after the order expired, the appellee went out and started stalking again. That's a different issue, though, than whether or not our mandate required two years. You're arguing that our mandate required a two-year order of protection. And what I'm suggesting is if in that order this court did not say it has to be a two-year, then isn't it then left up to the trial court's discretion so that then your argument would have to be whether that discretion was abused? I don't believe that he has the discretion to ignore matters which are implied in the order. And I think that this order that states that he erred in not granting us our motion, which then immediately follows thereafter and says the motion sought a two-year order. I think that you add those two sentences together and those matters are implied and should be considered embraced by the mandate pursuant to PSL. And that's at page 308 of that opinion. So the trial court, as PSL goes on, the trial court has no authority to act beyond the dictates of the mandate, and thus the controlling question in this appeal, just like it was in PSL, is whether the trial court complied with the mandate. And, of course, we can contend that, number one, the mandate did not allow the court to make additional factual findings. It just said enter and work. Enter and work consistent with this opinion. And so I know you contest the procedure by which the court found certain changed circumstances. That's correct. But as to the order, putting aside the issue of the duration of the order, six months or two years, do you have any other specific complaints against the order that was actually entered? We do. The second issue with the order that was entered was the court removed the mandatory language under the statute that requires a notice that violating the order is a misdemeanor on the first offense and a Class D felony on the second offense. We based the proposed order off of the Conference of Chief Circuit Judges form, and then we kind of tailored it for the specific instances of our case. And so, you know, he had received an approved form that had all the details filled in, and then he went in and removed that warning, which we believe is not in compliance with the mandate. Because the mandate ordered him to enter and work under the Act, and the Act requires that notice to be there. We gave him the notice, and he took it out. So we think that the language in the order that we've been discussing about two years and the relief that we saw and the fact that the court heard, we think those words matter. They count. They're part of the opinion that the circuit court judge should have looked at if he doesn't have discretion to avoid those words. So one of the findings that the trial court made was that, well, there hasn't been anything that's gone on for a year, and so therefore, you know, there's changed circumstances. We didn't come to the hearing prepared to have another stocking hearing on stocking events in the last year. We came, we thought it was going to be a pro forma event where we just handed him the order and he enters it. We tried to work out, you know, controversies over, you know, does she have to stay 100 feet away or 200 feet? And we tried to reasonably accommodate, you know, the defendant's concerns. There was a concern of, well, you know, gosh, if we drive over the road, part of the road is owned by the drivens, and that might be trespassing. We said we're not going to take that position. You know, we want you to stay 100 feet away from the drivens and 100 feet away from their house, you know, and stay off their property in general, but we're not going to contend that because you drive down the road to get to your house that you violated this order. Much of the last year before the entry of the order was spent appealing the order, and then the court entered this mandate. Let's see, the order issued on 6-7 of 2013. The mandate came out on July 22nd, and the Davidsons then filed a motion with this court to vacate the mandate, and this court denied that motion. Then they filed a motion with the Supreme Court, which granted the motion and vacated the mandate and basically had another six months of delay on to when the order issued. And so the entire year between when the court said, well, there hasn't been anything going on, that was all spent in litigation waiting for the court to enter the order pursuant to the mandate and the appeal. So the order specifically stated this cause is, well, the order states, the 6-7-13 order remains this cause to the circuit court for entry of a stalking no-contact order against the defendant and for a determination of a plaintiff's request for attorney's fees and costs. It did not remain for further argument or further fact-finding by the circuit court. And so we think that the circuit court's entry of further fact-finding violates the jurisdiction of the mandate because it's limited to doing only what is allowed in the order and mandate and nothing else. There's an error in my brief. I said that this was a general order. I think this is a specific order because it specifically instructs him to enter the order. So when a judgment, and I'm quoting PSL really again, 305, when a judgment is reversed by a court of review, the judgment of that court is final upon all questions decided, and if the cause is remanded, the circuit court can take only such action, which conforms to the judgment of the court of review. So, again, this gets back to the timing issue. We believe that a six-month order does not conform to the court's opinion, which said that he erred in not granting our motion, which sought two years of relief. So when an order does not comply with the mandate, it's void. And there's two reasons this order did not comply. The first was the time issue in our opinion, and the second is it doesn't follow the statute. We cited in the court, people ex rel daily versus Schreier, S-C-H-R-E-I-E-R, 92 in Illinois 2nd, 271 at 276 and 77. That's a 1982 Supreme Court case. In that case, the Supreme Court held that if the order is issued by a trial court, it's outside the scope of its authority, then it's void for lack of jurisdiction. And so the court's authority is limited by the mandate of the order, and so we don't believe that he could essentially give them a do-over by arguing for their facts. We also contend that the order is void because the factual findings were made without an evidentiary hearing. There was no notice that he was going to make factual findings or give us an opportunity to prepare. Well, there was a notice of hearing, which you got. We filed a notice of our motion. You knew there was going to be a hearing, and you had an opportunity at the hearing to be heard. Did you ask to present evidence? I mean, you know, whenever discussion came around about six-months order, all this kind of stuff, did you say, wait a minute, we want to put on some evidence? No, what we said was— Did anybody tell you you weren't allowed to put on evidence? Let me put it that way. Let me answer your first question first. Okay. We told the circuit court that we believe that the mandate and the order are controlled and that he didn't have the authority to do anything other than what those things said and that arguments about who did what or who's the bad guy are irrelevant and shouldn't be considered. That was our position, that this has all been decided. All that's left now is for you to enter the order, and the order should be two years. That's exactly what we told him. And we also were not told that he was going to make factual findings. You know, it was just argument of counsel as to why it should be six months as opposed to two years. I had no idea that he was going to make factual findings because if he had told me that, I probably would have said, well, we'd like a chance to prepare. So— Did the court ever ask either of you, either counsel, whether there has been any change in circumstances since the case was appealed? I don't remember. Okay. That's fine. I'm just being honest. No, we don't expect you to memorize the whole record. Yeah, I mean, as I read it this morning, it's embarrassing, so— No, that's okay. It'll be in the record one way or the other. Thank you. Thank you, guys. Your Honors, may it please the court, my name is Gary Meadows, and I represent the Davidsons in this matter. More specifically, I represent Geraldine Davidson, who has been the primary target over the last couple of years of the plaintiffs. Now, let me begin by just stating as a general matter that it feels a little strange to be here today. And what I mean by that is normally when I'm here as the appellee, it's because I've won the case, and the other side is trying to undo the order in some way. And that couldn't be further from the truth in this case. At the last appeal before this panel, or two-thirds of this panel, this court entered an order that the trial court was to enter a no-stop, or stopping-no-contact order, which obviously was not what we wanted. Obviously, we weren't excited about that. Were we going to live with it? Sure, because that's what we had to do. And we, therefore, go down on remand, and we end up in a situation where we acknowledge to the trial court that pursuant to this court's mandate, in order, you, Judge McGlynn, have to enter some form of an order. Now, the biggest part of the debate back at that time was the plaintiff's counsel had submitted what I think was a rather draconian proposal, which had all sorts of problems. Basically, it had First Amendment problems. It had due process problems, particularly considering the ongoing litigation, not only in this case, but against Mrs. Davidson and other cases, some of which I think are still in St. Clark County, another of which I think is on appeal. In a different action in this court. So, we basically pointed out all the problems with what they were suggesting, and basically said, look, Judge McGlynn, there is nothing. They haven't even suggested in the last couple of years that Mrs. Davidson hasn't been done anything. The last time that anything was ever said was a suggestion that Mrs. Davidson had somehow improperly farmed some part of the driven property, which is not true, but that was at least a claim that they were making. And that was over two years ago. So, we discussed all of this in front of Judge McGlynn. He enters an order of six months, which is not insignificant. Were we excited about that order? No, because we didn't think, although we acknowledged that he was going to be required to enter an order, we never thought an order was appropriate or necessary. Well, by the terms, I mean, and I wasn't on the panel before, but I can read the decision, just like any of the rest of us people with law degrees in the room here. There's nothing in that order that sets out what the terms of the stalking no contact order are to be. It just says enter one. Isn't it apparent on its face that there has to be some detail? Is it going to be stay 100 feet away? Is it going to be stay 200 feet away? You know, all those things had to be decided in some kind of a hearing. Is that a fair statement? I think that's absolutely correct, and that's why the trial court is particularly well suited to deal with those issues. For example, we're here today, and there are time limits that we have to address the court with. At the trial court, we can have spend it all morning. We can have evidentiary hearings. All of that is important to the ultimate order that he entered. And so we get the order in, and the reason I say I feel strange up here is that I'm sitting here defending an order that we never wanted, that we never thought was necessary, and yet were we willing to appeal that order? Yes. Were we willing to appeal that order? No. We're trying to move past it. The fact is that there's been no suggestion by anybody that Mrs. Davidson has done anything since 2012, and even that we think was not true back then. But they nevertheless still insist on this two-year idea, which isn't found in the court's prior mandate. So I'm sitting here defending a decision by Judge McGuinn when I feel like we lost the matter. And yet so I feel a little bit twisted here. I would prefer there be no order at all. Mrs. Davidson would clearly prefer there be no matter at all. So I feel like I'm sort of in a strange position, and it feels almost like a game in this case. It's sort of turned into that. And let me just explain a few reasons why I think that to be the case. First, the plaintiffs won. They won the last appeal. They've come to this court with two specific problems that they see with the order that was entered pursuant to this court's mandate. I think if you listen to the—and you obviously were here and listened to the oral argument— I think you'd be hard-pressed to say that they feel like they won. It appears both of you lost to some extent. In looking at the proposed order they submitted, frankly, they wanted everything under the sun. That gets to your argument about the merits of it. But the proposition that you start your brief with and that you're starting your oral argument with is they won. They have no reason to be here. I'm not sure that the record supports that. Okay. And you know what? Maybe one is sort of the gray area. I mean, typically the case law says you're not permitted to appeal orders that you win on. The question is what qualifies as a win, what doesn't. And I understand your point, Judge Goldenberg. The fact is, from my point of view, it's a loss. It was a loss when we were here last time. It's a loss if a judgment win. That's just the way it is. And yet here we are. And one of the reasons I think we're here comes down to one of the other agendas in this case, I believe. And that is the attempt to collect damages in the form of fees. Since when we were before Judgment Win, the briefing on the fee petition was in the middle of going forward. At that time, they suggested to the court that they were looking for approximately $270,000, an astronomical sum for this order. Astronomical. And the trial court has not ruled on that issue yet because the appeal intercepted it before he ever had a chance to rule on the fee issue. But going back to your point, which is whether they have the right to file this appeal at all, what they've done is filed the appeal and then bring with it all the other issues that they would prefer this court rule on rather than the trial court. They came before you and in their notice of appeal, they say, one, we want you to reverse judgment win as being a void order. Two, we want this court to enter the proposed order that I argued against back at the trial court. Three, they want this court to enter an order telling the circuit court it cannot modify that order absent extraordinary circumstances, which is nowhere found in the law. The statute is clear that an order can always be changed or can always be modified for a change in the law or the facts. They then proceed to say, by the way, while we're here, I would like you to enter an order telling the circuit court that he must award me on my fees. So we've now skipped over the trial court to come here. And then lastly, as part of their appeal, they then say, while we're also here, would you also sever these issues from all of my other issues so that we can get our money faster? So it seems to me that the purpose of this appeal is less about getting a two-year order, less about getting an order that's broader in scope. It's more about trying to figure out a way to get damages in the form of fees. And that's why I think it's probably part of the driving force. If fees weren't an issue, I don't think this appeal would exist. So that's one of the reasons that it strikes me that this appeal is almost – it seems, one, it's unnecessary because they've conceded that Mrs. Davidson has done absolutely nothing. They haven't even claimed she's done anything for years. And yet here we are still talking about putting an order into 2016. What's the point of that? There's no point. There's nothing to prevent. So – and one of the other things that it seems rather game-like, at least to me, is – and I think Justice Stewart pointed it out – is this fiction that the – at least I believe it to be a fiction – that the last order of this court required a two-year order. It simply didn't. It simply required the trial court to enter a no-contact order. And implicit in that, I believe, is exactly what the trial court would have to consider what was presented to it, what it thought was reasonable. This isn't – this isn't a story of a lover chasing somebody, you know, with flowers and whatever. This is two people that don't land next to each other. So it's particularly an awkward combination to try to figure out how to put an order in that doesn't violate people's constitutional rights or other rights. And so it's particularly noteworthy that he should have the ability to enter the order that he thinks is appropriate. But the reason I say that's a little bit – again, I feel like we're playing a little bit of a game on this, and it's not a game. I absolutely say that, is that we – there's a lot of print dedicated to the trial court has to obey the mandate, the mandate controls. And yet your mandate didn't stop with entering a no-contact order. The mandate went on to say, and make a determination on plaintiff's request for fees. Now, that hasn't happened, but what is in this appeal? A request that you instruct the circuit court that it must award fees. So apparently the mandate matters when it comes to the breadth and scope of the order, but it doesn't matter to fees. So it's just an interesting sort of dichotomy that the mandate only matters halfway to the plaintiff's. And that's why it feels a little gated to me. Again, this is my view of it. And third, another part that I think is – that as I was spending a good deal of money reading through all the briefs and one thing jumped out at me. And that is when the plaintiff's file – I'm going to read out this case. They submitted a few pages of facts. Many of those facts were designed to make my client look evil, malevolent, just a terrible person, right? The – and so we look very closely at all those facts and find out many of them are either completely contrived, they don't exist in the record, but they make for a good narrative. To try to, I assume, make an impression on this court that something further needs to be done. And I'll just give you a couple of examples because in our briefing, we then went through the facts in more detail, pointed out how some of the things they've said are just completely baseless. In just a couple of – a couple of three examples, they insist repeatedly throughout their brief that my client farmed a part of their land. Now, they know this to be untrue because they have self-secured math data from the other neighbor who agreed that he was the one that had done it. But that doesn't keep them from continuing to argue it was my client because it suits their narrative to say she did it. They also said – and I was particularly struck by this one – that she has photographed and videotaped them on their property and in their home. That comes out of nowhere, and I don't remember off the top of my head if there's a citation in their brief to that proposition. But if there is, it certainly doesn't support that, and it's completely made up. On the other hand, it makes her sound like she's doing something really terrible when, in fact, that's completely contrived. Now, there's other facts in there, and I've spelled a lot of them out in my briefing, so I won't go over them here today. But what do we – so we respond factually to all these things. The reply brief comes in. What is the response? All your facts don't matter. The facts are irrelevant because the only issue is whether the mandate was complied with. So we go from the plaintiff's opening brief describing factually how bad my client – he thinks – how badly he thinks my client has behaved to me defending my client, pointing out how incorrect they are and how false some of the statements are, and then suddenly the facts don't matter. So that's, again – I feel like it's a moving target on these cases where we can never actually get to a finish line. And so the bottom line is that sort of – they sort of change the rules about what's relevant and what's irrelevant. So although we're here – the oral arguments I heard are rather limited in scope, the fact is if you read all of the papers, the issues presented by this appeal as on the papers are clearly very broad. And it goes back to my question. Why are we continuing to fight it? Why do plaintiffs continue to fight about this when there's no claim that she's doing anything at this point or even the last couple of years? I think it comes down to the fees. The bigger the order, the more – presumably the easier it is to justify getting a fee award of $300,000 or better, which is I presume after this appeal is what we're going to be looking at. I would note, by the way, that of that 300 – of that money that's before the court, probably two-thirds of it was for work done in other litigation against Mrs. Davidson, which of course prompted us to file a 137 motion attacking that. And so that's still before the trial court, which is another reason that it's clearly the trial court's issue, or at least the trial court should have an opportunity to deal with that issue before this court steps foot into it. And – but my point is there's – and let me make one more thing. One of the other reasons there's nothing – they can't claim that my client's doing anything is, as I told the circuit court, the – after all this has been going on for so long, my client has been conditioned to try to avoid anything that occurs out of the neighborhood at Heartland Oaks. And this – I mean, somebody tried to sink her boat. Did she call the police? No. Why? Because who knows what discussions may be had and whether that might inevitably lead to a suggestion that she may – she named the drivens when talking about it. Is that in the record? It is. Okay, it is. And the point is the police would say, well, do you have any enemies? Well, they're suing me. I mean, the problem is as soon as you start having any discussion, it leads to a discussion about you're blaming us. You're again blaming us by calling the police for things. People were discharging guns in the lake behind her home, and what did she do? Nothing. And they had actually come from the drivens' property. We – when we took the trial, we didn't know who they were, but they came from that property. Did she do anything? No. She's been conditioned not to respond to anything because no matter what she does, it's characterized in some form as a stalking, which is why it feels like it's just a constant moving target, so she just avoids doing anything that could ever be misconstrued. So let me just address Mr. – a couple of the arguments that have been made by plaintiff's counsel. He mentions the idea that the court failed to include some of the language, which I think was the – any violation of this order, you can be arrested and it can be a felony or misdemeanor. And that's true. The court did not put that in there. Frankly, it could easily have been modified. Apparently he preferred not to modify it because we would – we could – we would easily have agreed to that because that's fine. The point is, though, my client was well aware of those ramifications, and that language is really there for her protection so that she's put on notice. She knows full well about the potential ramifications, which is why we fought so vigorously to avoid such an order. The idea of being arrested at the whim of the neighbor if they think you've done something they don't like is a very scary idea. So the point is – and then couple that with the fact that nothing has been going on out there for years, it's certainly harmless there. There's nothing to be done with that. This order expires by its own terms in approximately five or six weeks. And, frankly, to get hung up on that simply then causes this court – or causes the trial court to then have to enter a whole new order and a whole new set of problems, which is why we're trying to bring this to a close. The other issue we've raised is this idea that Mr. – that Plaintiff's counsel did not have a chance to really explain himself when we were before Judge McGuinn. There was a full chance to explain himself. I made my position clear. He made his position clear. And it was just a matter of waiting for what Judge McGuinn did. Let me ask you a question I asked your opposing counsel. Do you remember the trial court asked, has anything changed? I don't think he asked – yeah, I don't know if he used the word changed. I think he said who's living out there now. Okay. He said – and then they explained it was the daughter, the 21-year-old daughter of the druggist who's living there now. Yeah, and he asked what's going on now, and then he also asked something about is there – are you all planning on having a Christmas party out there? So is there something I need to do before Christmas? Because this literally was two or three days before Christmas. But he did – and then he asked if the house was listed for sale. So, yeah, he did talk about that stuff, and Mr. Maddox answered his questions, I think, fairly. And then he issued the order he did. So there was no due process issue. And, in fact, the irony is the order that they want this court to enter is replete with due process problems. So basically stopping my client from defending herself because it would prohibit her from talking about the drivens or talking about the property when, in fact, she's immersed in the litigation surrounding the drivens and the property. And that's another part that seems a little – gave me the due process works only one way. So the bottom line from my point of view is that this is not a game. We've never treated it as a game. The stakes are extremely high. And, in fact, in our view, plaintiffs are – by these stalking claims are basically trying to force my client out of Harland Oaks and possibly into bankruptcy with this fee award that they're going to try to get from my client, which will probably be over $300,000 by the time we're there. And that very well could have that impact. It's very, very serious, which is why we don't take any of this lightly. And the stigma associated with this is also very real because Mr. Plaintiff's counsel actually sent your last order to one of the new neighbors unsolicited, I presume, to try to impact that relationship. There's a stigma associated with all of it. So the bottom line is we would ask that we don't think it's really a proper 307 appeal, but if this court believes that it is technically a proper appeal, if it could be characterized as loss, then we would ask you simply affirm judgmentally, let this order expire by its natural terms, and then we will proceed at the trial court level and try to wrap up whatever remaining issues there are. Thank you. And if I may say, Mr. Manning may step up here and talk about, again, talk about how serious my client's conduct is and the allegations. And please bear in mind, as I pointed out, many of the things they say are simply unsupported by the record or not. Thank you, counsel. Thank you. Your butt. Thank you, Your Honors. First of all, I want to address the allegations that are factual citations or not supported by the record. I was at every single evidentiary hearing in this matter, and all of the factual allegations are well supported by the record. There were included in some of the trial exhibits photographs taken by Mrs. Davidson of the drivens. So to say that the drivens, you know, are making things up in our fact pattern that we put in our briefs, that's just not accurate, and I would refer the court to the briefs. The second issue that he raised with respect to misciting facts was farming of the land. And he claims that Dr. Engelagy, one of the other neighbors, gave an affidavit saying that he farmed the drivens' land with their permission, which is true. Dr. Engelagy signed an affidavit that said that. There's a farmer that farms both Davidson and Engelagy's property. His deposition was also in the record. And he said that Davidson hired him to farm all of it. And so that's point number one. Point number two is that Engelagy's affidavit dated 2011. This is all in the library. There's photographs of the driven's 50-foot strip that supposedly gives them access that's being farmed. Engelagy stopped farming the driven's 50-foot strip, and you can see the wild growth in that area. But you can see where the Davidsons did farm their 50-foot strip on their side. So I don't know why he raises that point. It doesn't help him. It's also irrelevant. The only real issue in our opinion is whether or not the trial court conformed, his order conforms with the mandate. The law of the case now is that she stopped the driven's and that the order should end. And going back and re-arguing the facts is really, you know, it's just not helpful in my opinion. The driven's also dispute that there's been no further stocking incidences. They just don't have any money to pursue this indefinitely. I mean, Dr. Driven does very well for a living, but he's not made of, you know, the kind of money that Mrs. Davidson's insurance company has. I also haven't been paid. So, you know, the work that I'm doing has basically been pro bono up to this date without an order. But anyway, back to the merits. Another citation that we put in our brief to respond to his arguments about the terms of the order is Clemmons v. Mechanical Devices, 202 Illinois 2nd, 344. It's a Supreme Court case from 2002. Clemmons, I believe, directly addresses Justice Seward's concerns because in Clemmons, the issue was whether or not the trial court should have allowed the party to amend their complaint and add new counts. And the trial court wouldn't let them do it. The appellate court affirmed. And the Supreme Court reversed, and they said, look, when the mandate says we reverse and remand for a new trial consistent with the views expressed herein, and it's implied, it's implied that he should be allowed to try new counts that were the basis of the reversal. Okay. Then in that situation, you have to conduct your further proceedings in accordance and in conformity with the mandate and order. And so the specific case citations, if you're looking at Westlaw, the head notes start at 12 and go through 14. It says that, you know, the controlling principles are established, the judgments are reversed, and the costs are mandated. The trial court can only hold such further proceedings as conform to the judgment of the appellate tribunal. You know, string side. Before this court, defendant acknowledges the principle. However, defendant observes neither this court nor the appellate court specifically directed the trial court to allow plaintiff to amend the complaint. Okay. And then defendant argues that due to the general remand of this court and the appellate court in clemency one, the trial court retained discretion to allow or deny plaintiff leave to amend the complaint. And this is the key point, head note 14. However, it's not required that reviewing courts state specific directions in an order reversing a judgment remanding a cause. In such a case, it's then the duty of the court to which the cause is remanded, to examine the reviewing court's opinion and proceed in conforming with the views expressed therein. So when your opinion says we ask for a two-year order and the court erred in not giving us an order, we think that that, you know, a reasonable reading of that and acting in conformity with that requires a two-year order. Thank you. Thank you, counsel. The case will be taken under advisement, be excused, and an order will be entered into due course. Thank you, Your Honors.